**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

---

**ALMA ARIAS, *et al.*,**

Plaintiffs,

v. No. CIV 07-390 BB/DJS

**RICHARD V. PACHECO, *et al.*,**

Defendants.

# MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants Det. Richard Pacheco, Cap. Brandon Gigante, Det. Sergio Lara, Det. James Wycoff, Sgt. Raymond Esquivel, Sgt. Glen Chadborn, and the Deming Police Department's (collectively, "the defendants") motion for summary judgment (Doc. 47) based on the qualified immunity of police officers in their personal capacities. Having reviewed the submissions of the parties and the relevant law, the Court finds that the defendants' motion for summary judgment should be DENIED.

## FACTUAL BACKGROUND

In their complaint, plaintiff Alma Arias, individually and on behalf of her son, Ray Marrufo, Jr., and plaintiff Julie Marrufo (collectively, "the plaintiffs") sue under 42 U.S.C. § 1983 and allege that their Fourth and Fourteenth Amendment rights were violated in April 2005, when the defendants—who are law enforcement officers employed by the City of Deming, New Mexico—entered their residence and arrested Alma Arias.

The following facts are stipulated by both parties. The plaintiffs live in a home in Deming. The defendants obtained a search warrant after conducting surveillance on the

plaintiffs' residence twice—the nights of March 31, 2007 and April 19, 2007. The search warrant was based on suspicion of narcotics possession and methamphetamine manufacturing. Warrant in hand, the defendants, who were dressed in camouflage uniforms as a Special Response Tactical team (SRT team), entered the plaintiffs' home with their guns drawn at approximately 3:30am April 20, 2007. The defendants searched the residence room-by-room, looking for narcotics and drug paraphernalia with their firearms exposed. This search yielded a small amount of marijuana and methamphetamine. Also, the defendants arrested plaintiff Alma Arias for receipt of stolen property. The charges against Ms. Arias, however, were dropped.

That is the extent of the stipulated facts. Many more exist upon which the parties disagree, and until these disputes are resolved, the Court cannot decide the contested legal issues.

**GENUINE DISPUTES OF MATERIAL FACT**

The defendants assert that they conducted surveillance on plaintiffs' home after they received reliable information from an anonymous source that a methamphetamine laboratory existed there. (Gigante Dep. 31:8-14, May 1, 2008). During their two nighttime stakeouts, the defendants claim they observed anywhere from four to fifteen individuals arrive at the house on bicycles, by foot, or in vehicles. (Pacheco Dep. 71:15-72:3, May 1, 2008). According to the defendants, these individuals entered through the garage, stayed for a short time, and departed. (Pacheco Dep. 71:18-20, May 1, 2008). The plaintiffs, on the other hand, deny such visits to their home during those hours and state that the defendants got the warrant through false pretenses and exaggeration regarding the anonymous tip's reliability and their observations from surveillance. (Arias Dep. 15:10-15, 29:24-30:1, Feb. 12, 2008); (Pretrial Order, Doc. # 55, pg. 3). Thus, the plaintiffs argue that the defendants lacked a valid warrant, that the defendants'

search exceeded the scope of the warrant, and that no probable cause existed to support the warrant. (Pretrial Order, Doc. #55, pg. 3).

Further, a dispute exists about whether the defendants complied with the "knock and announce" rule. That rule requires police officers executing a warrant to communicate their presence at a residence, and provide an opportunity to those inside to respond, before forcibly entering. At this stage, the Court is faced with a direct disagreement. The defendants believe that they indeed knocked and communicated their identity as police officers before entering. (Gigante Dep. 56:1-15, May 1, 2008). The plaintiffs, however, deny hearing any knock or announcement before being seized. (Arias Dep. 41:16-18, Feb. 12, 2008).

The plaintiffs also assert that once the defendants entered the home—irrespective of whether such entry was lawful—they pointed firearms at nine-year-old Ray Marrufo, Jr., and handcuffed plaintiffs Alma Arias and Julie Marrufo in excessively tight fashion, thereby causing physical injuries. (Ray Marrufo, Jr. Dep. 25:11-16, Feb. 12, 2008); (Arias Dep. 72:10-19, Feb. 12, 2008); (Julie Marrufo Dep. 25:20-25, 49:2-13, Feb. 12, 2008). The plaintiffs claim that this constituted excessive force. Yet the defendants deny pointing guns at the child; they claim that they lowered their firearms as soon as they thought the premises were secure; and they assert that their use of handcuffs was reasonable under the circumstances. (Def.'s Reply Br., pg. 4).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs motions for summary judgment. Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). Also, the trial court must

review the evidence presented in the light most favorable to the non-moving party—the plaintiffs in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY**

Two other elements are at play when courts rule on summary judgment motions based on qualified immunity defenses. Indeed, when government officials raise the affirmative defense of qualified immunity, it will protect all "but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1985); *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001). Thus, even if the Court accepts the plaintiffs' assertions as true, the plaintiffs still must show, first, that their alleged facts amount to a violation of a clearly-established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Second, plaintiffs must show that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Qualified immunity's underlying rationale is to protect law enforcement officials from not only frivolous lawsuits, but also the chilling effect of protracted litigation arising out of official action taken in good faith. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007); *see also Harlow*, 457 U.S. at 818 (stating, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

**QUESTIONS PRESENTED**

The threshold questions in this case, therefore, are: (1) whether any genuine issues of fact, that are material to the plaintiffs' legal claims, remain in dispute; and, (2) if so, whether the evidence put forward by the plaintiffs—taken as true—amounts to a violation of a clearly-

established constitutional right of which a reasonable officer under the circumstances should have known. If the plaintiffs fail to satisfy either standard, the defendants are entitled to summary judgment based on qualified immunity. *Harlow*, 457 U.S. at 818.

**PLAINTIFFS' CLAIMS THAT DEFENDANTS LACKED A VALID WARRANT AND PROBABLE CAUSE**

A. Valid Warrant Analysis

The first issue the plaintiffs raise is whether the defendants had a valid warrant to search the residence. The defendants' motion for summary judgment as to this claim is DENIED because the evidence is unclear as presented that the warrant was valid; and it is clearly-established that an official's entering to search the home of a suspect without a valid warrant, consent, or exigent circumstances, violates the Fourth Amendment.

The Fourth Amendment states, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV; *Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (holding that a warrant that does not describe the items to be seized is invalid on its face, and thus its executing officers are not entitled to qualified immunity); *U.S. v. Leon*, 468 U.S. 897, 923 (1984) (holding that, "a warrant may be so facially deficient . . . in failing to particularize the place to be searched or the things to be seized . . . that the executing officers cannot reasonably presume it to be valid.").

In *Groh*, the plaintiff and his family lived on a ranch that the Bureau of Alcohol, Tobacco and Firearms ("ATF") believed to be the site of a large stock of weaponry. 540 U.S. at 554. This belief led the ATF agents to prepare a detailed affidavit, which they presented to a magistrate

with a warrant form for the magistrate to sign. *Id.* Though the affidavit was detailed, the warrant itself failed to identify any items or persons to be seized. *Id.* The plaintiff, therefore, argued that the warrant violated the Fourth Amendment because it did not "describe with particularity the place to be searched and the items to be seized." *Id.* at 555. The Supreme Court agreed, holding that a warrant that does not describe the items to be seized or the premises to be searched is as good as no warrant at all. *Id.* at 558.

Based on the evidence viewed in the light most favorable to the plaintiffs, the Court cannot be sure that the defendants had a warrant that validly described the place to be searched and the persons or items to be seized. This is due to the simple fact that the defendants have not provided as evidence the search warrant that they executed on April 20, 2007. To be clear, the Court does not find that the warrant in this case was faulty. Yet until it is available for scrutiny, the warrant's facial validity is unknowable. *Cf. U.S. v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005) (setting out the general standard for the particularity requirement in the Tenth Circuit and finding that a description in a warrant is sufficiently particularized when it enables the searcher to ascertain and identify the things to be seized). Since the Court lacks proof from the moving party in the form of the warrant itself, the Court is unable to be certain whether the warrant was sufficiently particularized or executed in good faith. A genuine issue of material fact remains in dispute, and more evidence must be produced before judgment as a matter of law is appropriate.

Also, as the Fourth Amendment itself, *Groh*, and numerous other cases have clearly established, particularity is required in a valid warrant. In *Groh*, the Supreme Court said that the presumption that a warrantless search is unreasonable also applies to a search with a warrant that fails to conform to the particularity requirement. 540 U.S. at 560. To be sure, the particularity

requirement is a constitutional right of which a reasonable officer under the circumstances of this case should have known. Until they prove that the warrant was facially valid, therefore, the defendants therefore cannot take cover under qualified immunity.

B. Reasonable Scope of the Search Analysis

Even if the warrant was valid, the plaintiffs imply in the pretrial order that the defendants' search in fact exceeded the scope of the warrant. (Pretrial Order, Doc. # 55, pg. 5) (the plaintiffs describe as a contested fact in the pretrial order that the warrant specified that the search was for a "meth lab," but that the police exceeded the scope of the warrant by searching in places a methamphetamine lab could not fit). In his deposition, Defendant Richard Pacheco acknowledged that the defendants searched the entire house, including inside a cup on a shelf in the garage. (Pacheco Dep. 124:10, 125:17-21).

Moreover, it is a clearly-established Fourth Amendment right that warrants shall describe the things to be seized, and that government officials may not exceed the scope of a warrant by looking in places that specified evidence or contraband could not be located. *Marron v. U.S.*, 275 U.S. 192, 196 (1927). A precise and legal warrant cannot be used by the police "as a ticket to get into a man's home, and, once inside, to launch forth upon unconfined searches and indiscriminate seizures[.]" *Walter v. U.S.*, 447 U.S. 649, 653 (1980).

Given the foregoing, if the plaintiffs' assertion that the warrant only provided entry to search for a "meth lab" is true, defendants would be entitled to search just the areas in which a methamphetamine laboratory could be physically located. On the other hand, if the warrant also allowed the defendants to look for narcotics or drug paraphernalia, the defendants would have license to search anywhere such items could be located, including small containers. The bottom

line is that the Court cannot rule on whether the defendants' searching inside the cup exceeded the scope of the warrant because the Court has not seen the warrant. Again, more evidence is necessary before the issue of summary judgment can be resolved.

C. Probable Cause Analysis

Next, the plaintiffs allege that the defendants used false pretenses and false statements to obtain the search warrant, and therefore that probable cause did not in fact exist. (Pretrial Order, Doc. # 55, pg. 3). When viewed in the light most favorable to the plaintiffs, the Court cannot be sure that the defendants had a warrant based on probable cause or a good faith belief that probable cause existed. This is because the defendants have not provided the Court with the affidavit they presented to the magistrate.

A warrant is based on probable cause when the facts presented in the affidavit would "warrant a man of reasonable caution" to believe that evidence of a crime will be found at the place to be searched. *Texas v. Brown*, 460 U.S. 730, 742 (1983). But if officers knowingly or recklessly mislead, mischaracterize, exaggerate or omit essential evidence in their affidavit to a magistrate, they are not entitled to qualified immunity on the issue of probable cause. *DeLoach v. Bevers*, 922 F.2d 618 (10th Cir. 1990).

In *DeLoach*, the Tenth Circuit held that a warrant is invalid, and its executing officers are not entitled to qualified immunity, if the magistrate judge was misled by information in the affidavit that the police knew was false or would have known was false but for a reckless disregard for the truth. 922 F.2d at 621. Of course, the logical inverse rule would be that if officers acted in good faith when making an affidavit and presenting it to the magistrate, qualified immunity would apply to protect them from lawsuits. The Tenth Circuit in *DeLoach*

cited persuasive evidence that the defendant-officer in that case included exaggerations and omitted crucial facts in her affidavit to the magistrate. *Id.* at 622. The Court makes no such allegations against the defendants in this case. Indeed, the defendants may have been sincere, and the magistrate may have used reasonable caution in his determination through the affidavit that evidence of a crime would likely turn up at the plaintiffs' home. Yet the plaintiffs allege that the defendants used false pretenses to obtain the warrant, and until the affidavit is available to the Court, it is impossible to adjudge either the magistrate's decision or the accuracy of the defendants' characterization of the facts.

In addition, for purposes of the qualified immunity defense, the Court must also note that the probable cause doctrine was clearly-established in April 2007, when the events here in question occurred. Indeed, the probable cause requirement is ancient. *E.g. Boyd v. U.S.*, 116 U.S. 616 (1886); Jack K. Weber, *The Birth of Probable Cause*, 11 ANGLO-AM. L. REV. 155, 158-60 (1982) (tracing probable cause to 13th Century England, where "suspicion" was required before the constable could effect arrests); *see also U.S. v. Bishop*, 890 F.2d 212 (10th Cir. 1989).

To summarize, the contents of the search warrant and its underlying affidavit remain unknown to the Court. Officers are not entitled to qualified immunity if they execute a facially invalid warrant, exceed the scope of a facially valid warrant, or if they misconstrue facts in an affidavit to a magistrate when obtaining a warrant. Thus, the defendants' motion for summary judgment on these issues is DENIED.

**PLAINTIFFS' CLAIM THAT DEFENDANTS VIOLATED THE "KNOCK AND ANNOUNCE" RULE**

Absent exigent circumstances implicating potential and immediate physical danger, destruction of property, or destruction of evidence, an established constitutional rule requires police officers executing a warrant to knock and announce their presence, giving those inside an opportunity to respond, before forcibly entering a residence. *See Wilson v. Arkansas,* 514 U.S. 927, 929 (1995) (holding that the "knock and announce principle forms a part of the reasonableness inquiry under the Fourth Amendment.") (internal quotations omitted); *see also U.S. v. Nielson,* 415F.3d 1195, 1199 (10th Cir. 2005) (holding that officers must comply with the knock and announce rule unless they have a "reasonable suspicion" that knocking and announcing their presence would be dangerous, futile, or allow for the destruction of evidence.)

Although the plaintiffs have not proved that the officers violated the "knock and announce" rule, nor have the defendants proved that they complied. In fact, none of the defendants definitively asserted that he knocked and announced before entering the plaintiffs' residence. In his deposition, Lieutenant Gigante stated that he believed the defendants knocked and announced because the SRT team "makes it a habit to always knock and announce[.]" (Gigante Dep. 56:1-15, May 1, 2008). Yet he went on to say that he was not certain whether the SRT team knocked and announced before they entered on the occasion in question. (Gigante Dep. 56:19-21, May 1, 2008). Also, the plaintiffs do not recall hearing any knock or announcement and believe the officers entered prematurely. (Arias Dep. 41:16-18, 70:1-2, Feb. 12, 2008) (Ms. Arias stated that no one knocked; she also said that she "has light sleep"—implying that if the defendants had knocked and announced, she would have heard it).

Further, as indicated above, the "knock and announce" rule was clearly established as a constitutional right by the Supreme Court in *Wilson* and subsequent cases. In *Wilson*, the Court said that the rule was "woven quickly into the fabric of early American law." 514 U.S. at 932-33. The defendants do not argue in their briefs that an exception to the rule, such as exigent circumstances, applies. They assert instead that they adhered to the "knock and announce" rule, using Captain Gigante's rather dubious testimony cited above as evidence of compliance. (Def. Mem. of Law, Doc. #47, pg. 4). However, Ms. Arias' deposition testimony—denying that the defendants knocked and announced and claiming that she would have heard the officers at the door—belies this assertion. A genuine dispute of a material fact remains, and the defendants' motion for summary judgment is therefore DENIED.

**PLAINTIFFS' CLAIM THAT DEFENDANTS USED EXCESSIVE FORCE**

A. Pointing Firearm at Minor

On the plaintiffs' claim that the defendants used excessive force once the defendants entered, again summary judgment is DENIED. In *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192 (10th Cir. 2001), a SWAT team executing a search warrant entered a residence looking for evidence related to a suspect's alleged assault and reckless endangerment. *Id.* at 1183. Once on the premises, the police allegedly pointed a gun at a four-year-old child. *Id.* at 1184. The residents sued the officers for excessive force, and the defendant-officers invoked qualified immunity. *Id.* at 1185. Yet the Tenth Circuit determined that, assuming the plaintiffs' testimony was true, a valid claim of excessive force would exist. *Id* at 1193. The Tenth Circuit thus denied summary judgment—finding that even if the SWAT Team's initial show of force may have been reasonable under the circumstances, continuing to hold children at gunpoint after

the officers had gained control of the situation was unjustified. *Id.* Thus, where a person has not resisted an officer's show of force, it may be excessive and unreasonable to continue pointing a loaded firearm at that person. *Id.* at 1192-93. Moreover, aiming a firearm at a young child who is neither being arrested, suspected of a crime, nor posing a threat to others is conduct that shocks the conscience. *Id.* at 1192.

As in *Holland*, the plaintiffs in this case allege that the defendants pointed firearms at a nine-year-old boy, Ray Marrufo, Jr., even though he neither resisted nor posed a threat. (Ray Marrufo, Jr. Dep. 25:11-16, Feb. 12, 2008). Nevertheless, the defendants defend their use of firearms under the circumstances—claiming that they used firearms only to the extent necessary to secure the location. (Def.'s Reply Br. 3). The Court does not underestimate the difficulty police officers face when executing a warrant in a potentially hostile environment. Still, the Court is faced with a genuine dispute over what occurred. The defendants say that their use of firearms was reasonable; the plaintiffs argue that it was unnecessary and dangerous. (Arias Dep. 70:20, 71:13, Feb. 12, 2008). Also, though the defendants could have been acting in good faith when using their firearms, that too is unclear on the evidence available. Thus, this question remains one for a jury, both because more evidence must be disclosed and a credibility determination remains out of reach.

B. Excessively Tight Handcuffs

Also related to excessive force, Ms. Alma Arias asserts that she was shackled to a chair, causing bruises on her arms. (Arias Dep. 72:10-19, Feb. 12, 2008). Julie Marrufo alleges that the defendants dragged her out of bed, smashed her face into the floor and handcuffed her,

causing her pain. (Julie Marrufo Dep. 25:20-25, 49:2-13, Feb. 12, 2008). On these issues too, the defendants' motion for summary judgment is DENIED.

The force needed to effect a seizure in a particular instance requires a careful balance between the nature of the intrusion on the individual's constitutional rights versus the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The analysis is fact-driven, depending on multiple factors, such as whether the suspect poses a threat, whether the suspect was resisting arrest or attempting to evade. *Id*. An officer's use of handcuffs must therefore be analyzed on a case-by-case basis. *Holland*, 268 F.3d at 1195. Under Tenth Circuit precedent, unduly tight handcuffs may constitute excessive force in some instances, so long as the detained person complains or otherwise timely communicates that the handcuffs are too tight, and the police fail to respond appropriately. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008); *Cortez*, 478 F.3d at 1109.

In *Vondrak*, the plaintiff, Dr. Vondrak, presented evidence that he complained that his handcuffs hurt, and the police failed to loosen them after his arrest, causing him injury. 535 F.3d at 1202. Based on that, the Tenth Circuit affirmed the district court's decision to deny the police officer's motion for summary judgment on Dr. Vondrak's excessive force claim. *Id.* at 1208. In *Cortez,* on the other hand, the Tenth Circuit held that a plaintiff claiming excessive force due to handcuffs that were too tight must provide evidence of actual injury to withstand the defendants' motion for summary judgment based on qualified immunity. 478 F.3d at 1129 (holding that, "a claim of excessive force requires some actual injury that is not *de minimis*").

Here, like the plaintiff in *Vondrak,* Alma Arias asserts that the defendants injured her arms and neck by handcuffing her to a chair in excessively tight fashion. (Arias Dep. 72:15-23,

Feb. 12, 2008). Ms. Arias further alleges that the defendants handcuffed her daughter, Julie Marrufo, for no good reason since—as a 105 pound young lady—Ms. Marrufo posed no threat and was not resisting the police. (Arias Dep. 69:10-14, Feb. 12, 2008). Ms. Arias also testifies that the handcuffs caused visible bruises on Julie's arms. (Arias Dep. 73:9-14, Feb. 12, 2008). Assuming this testimony is accurate, as the Court must at this stage, these injuries would exceed the *de minimis* standard set forth in *Cortez.* Also, Julie Marrufo alleges that she complained about the handcuffs' tightness to no avail as an officer removed her from her home. (Julie Marrufo Dep. 61:17-23, Feb. 12, 2008). Thus, under *Vondrak*, Ms. Marrufo would have a valid claim of excessive force. The defendants nonetheless argue that their use of force was appropriate in a potentially hazardous search for a reputed methamphetamine laboratory. (Def.'s Reply Br. 4).

Summary judgment is improper when questions of law turn on contested facts. Excessive force is a legal theory that often eschews bright-line rules and opts for nuanced factual examination. The defendants' motion for summary judgment on the plaintiffs' claim of excessive force is therefore DENIED.

**CONCLUSION**

The defendants' motion for summary judgment is DENIED as to plaintiffs' claims that the defendants lacked a valid warrant, and exceeded the scope of the warrant, since the defendants have not provided the warrant. Also, the defendants motion for summary judgment in regards to probable cause is DENIED because, without the affidavit, the Court cannot determine whether the defendants had probable cause or acted in good faith. Similarly, the defendants' motion for summary judgment on the plaintiffs' claim that the defendants failed to knock and

announce their presence once they obtained a warrant is DENIED. This is because the evidence submitted thus far presents a contradiction in accounts on that issue. Finally, since the plaintiffs' testimony, if true, would establish a violation of the clearly-established constitutional right to be free from excessive force, summary judgment for defendants on that claim is also DENIED.

SO ORDERED this 25th day of September, 2008.

BRUCE D. BLACK
United States District Judge